**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**HARRY ASHBY,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　Case No.  8:07-cv-898-T-30MSS

**NATIONAL FREIGHT, INC.**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Final Summary Judgment and Memorandum of Law in Support (Dkt. 32), and Plaintiff's Response Memorandum in opposition to the same (Dkt. 35).  The Court, having reviewed the motion, response, and supporting memoranda, and being otherwise fully advised in the premises, determines the motion should be denied.

### Background

Plaintiff Harry Ashby ("Plaintiff") was employed by Defendant National Freight, Inc. ("NFI" or "Defendant") as a semi-tractor trailer driver from November 14, 2005, through May 11, 2007.  Purportedly one of the largest trucking companies in the United States, NFI provides transportation services for a wide variety of goods in all fifty states.  NFI holds a permit from the United States Department of Transportation as an interstate motor carrier authorized to haul general freight, household goods, refrigerated food, and paper products.

During Plaintiff's employment, he primarily serviced NFI's Central Florida customers, including Nestle Waters North America, Inc. ("Nestle Waters") and IFCO Systems North America, Inc. ("IFCO"). According to Plaintiff, he transported bottled Zephyrhills brand water for Nestle Waters from Nestle Waters' Zephyrhills plant to several distribution centers. See Plaintiff's Affidavit, Exhibit A to Plaintiff's Response (Dkt. 35-2). His routine route only covered Central Florida cities such as Orlando, Kissimmee, Lakeland, Bartow, Tampa, St. Petersburg, and Clearwater. Id. IFCO provides pallet management services to various national retail clients in Central Florida. When servicing IFCO, Plaintiff picked up empty pallets from IFCO's retail customers and transported them back to its Bartow service center for processing. According to Plaintiff, he would occasionally transport pallets from the service center back out to IFCO's retail customers. Id.

The scope of Plaintiff's duties with respect to these customers is in dispute. Defendant claims NFI drivers servicing Nestle Waters, including Plaintiff, transported both domestic and foreign water brands to its branches, which in turn provided the products to residential and corporate clients in Florida and Georgia. According to Defendant's records, approximately six percent of retail loads hauled for Nestle Waters by NFI drivers, including Plaintiff, contained foreign water brands shipped from Europe. In the Sworn Declaration of Eric Gabel, Plaintiff's supervisor, Gabel claims he always notifies new hires that they are expected to drive any of the company's loads, including out-of-state runs. Exhibit 2 to Defendant's Motion (Dkt. 32-3). While Gabel does not claim Plaintiff transported good out-

of-state, he states that Plaintiff could have been required to run an interstate load during his employment.

Defendant also claims the pallets picked up by NFI drivers for IFCO often originated out-of-state and were transported into Florida from IFCO's customers' suppliers. NFI drivers picked up the pallets from IFCO's customers, such as Home Depot, CVS, and Lowe's, and delivered them to the NFI Bartow service center. The pallets were then sorted at the service center based on their condition. If in good condition, pallets were transported back out by NFI drivers to other IFCO clients, including out-of-state customers. Pallets in bad condition were either repaired and shipped out or shredded and used for mulch.

Contrary to Gabel's assertions, Plaintiff claims Gabel advised him at the time he was hired that he would only transport goods within the state of Florida. Id. Plaintiff claims he never transported goods outside of Florida, and that he was never informed by NFI that he could be expected to transport goods outside the state. Id. Moreover, Plaintiff claims he never transported any of Nestle Waters' foreign water brands, such as Acqua Panna, San Pellegrino, Perrier, or Contrex. Id. Plaintiff also claims IFCO did not track individual pallets, that pallets were stacked in no particular order at the Bartow service center, and that they were sorted only by their condition.

In his Complaint, Plaintiff alleges NFI failed to pay him and similarly situated employees time and one-half their regular rate of pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 209 *et seq.* ("FLSA"). At issue is whether Plaintiff, as a semi-tractor trailer

driver for NFI's customers, was exempt from the overtime pay provisions of the FLSA based on the motor carrier exemption.

## Discussion

### I.    Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Chelates, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.     Legal Analysis

Pursuant to Section 7 of the FLSA, employers are required to pay overtime wages to employees engaged in commerce at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty within a workweek. See 29 U.S.C. § 207(a)(1). However, Section 13 of the FLSA sets forth a number of exemptions to this overtime compensation requirement. See 29 U.S.C. § 213. Specifically, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(b)(1). The Motor Carrier Act grants the Secretary of Transportation the power to regulate qualifications and maximum hour requirements for employees of motor carriers engaged in interstate commerce, providing in relevant part as follows:

>> (B) Motor carrier and private motor carrier requirements.--The Secretary of Transportation may prescribe requirements for–
>
>> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
>> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

49 U.S.C. § 31502.

As explained by the Eleventh Circuit,

> [t]he Secretary has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act, and (2) engage in activities of character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

Baez v. Wells Fargo Armored Service Corp., 938 F.2d 180, 181-82 (11th Cir. 1991) (citing 29 C.F.R. § 782.2). "Employers who claim that an exemption applies to their employees must show that the employees fit plainly and unmistakably within its terms." Choa v. First Class Coach, 214 F. Supp. 2d 1263, 1271 (M.D.Fla. 2001) (citing Worhington v. Icicle Seafoods Inc., 774 F.2d 349, 352 (9th Cir. 1984), *cert. granted in part*, 474 U.S. 900, 106 S.Ct. 270, 88 L.Ed.2d 224 (1985), *and judgment vacated on other grounds*, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)).

Pursuant to the applicable regulations, the MCA exemption applies to employees who either (i) actually transport goods across state lines, or (ii) do not cross state lines but

transport goods as a part of a "practical continuity of movement" across state lines from the point of origin to the point of destination. 29 C.F.R. § 782.7. Moreover, an employee of a carrier who drives a motor vehicle is not exempt if his job never involves transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act. 29 C.F.R. § 782.8. Other courts in this district have applied a "reasonable expectation" test, whereby drivers who never drive interstate routes may be subject to the Secretary's jurisdiction if they could be reasonably expected to make one of the carrier's interstate runs. Chao, 214 F. Supp. at 1276. Such a reasonable expectation means more than a remote possibility. Id.

Plaintiff does not dispute that NFI is subject to the Secretary's jurisdiction under the Motor Carrier Act. See 29 C.F.R. § 782.1(b). Furthermore, Plaintiff does not dispute that he was employed as a semi-tractor trailer driver and, as such, directly affected the safety of motor vehicle operation on the highways. Rather, Plaintiff disputes that he individually was engaged in the transportation of property in interstate or foreign commerce. Plaintiff argues that during his employment with NFI he neither traveled across state lines nor transported goods as part of a practical continuity of movement across state lines.

Defendant's argument to the contrary centers on Plaintiff's job duties while transporting goods for both Nestle Waters and IFCO. With respect to Plaintiff's transport of Zephyrhills water for Nestle Waters, Defendant argues Plaintiff and other NFI drivers transported Zephyrhills brand water, along with foreign Nestle Water brands originating in Europe, to Florida branches for ultimate delivery to Florida and Georgia customers. According to Gabel's Declaration, NFI drivers delivered Zehphyrhills brand water to branch

locations including the Tallahassee, Florida branch, which in turn distributes products to Georgia customers. See Declaration of Eric Gabel (Dkt. 32-3). Included in those loads were foreign water brands that originated in Europe. Edward Sheaffer, Regional Transport Manager for Nestle Waters, has testified that five percent of the total Home and Office delivery to Nestle Waters' Florida branches consisted of mixed loads containing foreign product. See Sworn Declaration of Edward Scheaffer (Dkt. 32-18). Defendants have also produced routing sheets demonstrating that Plaintiff transported loads to Publix and BJ Wholesale Club in South Florida. Approximately six percent of loads transported to these customers by NFI drivers included foreign water brands. Furthermore, Plaintiff's supervisor has testified that he routinely told all drivers at the time of hiring that they could be expected to drive any run, including out-of-state runs, at any time.

Plaintiff argues Defendant has failed to meet its burden of establishing Plaintiff engaged in interstate commerce. According to Plaintiff's Affidavit, Plaintiff never traveled out-of-state and was told at the onset of his employment that he would not be expected to make out-of-state runs. Moreover, Plaintiff claims he never transported any foreign water brands. According to Plaintiff's Affidavit, he primarily delivered water to Central Florida locations rather than Tallahassee. Defendant has failed to provide specific evidence that Plaintiff individually either (i) transported water to Tallahassee that was in turn shipped to Georgia customers, or (ii) transported any foreign water brands. Plaintiff's Affidavit raises material issues of fact more appropriately addressed by a jury. Accordingly, Defendant's motion for summary judgment must be denied to the extent it is based on Plaintiff's duties

while servicing Nestle Waters.

Likewise, Defendants have also failed to provide sufficient evidence that Plaintiff engaged in interstate commerce while transporting pallets for IFCO. "Crucial to a determination of the essential character of a shipment is the shipper's fixed and persisting intent at the time of shipment." Foxworthy v. Hiland Dairy Co., 997 F.2d 670, 672 (10th Cir. 1993). A three-prong test originally developed by the Interstate Commerce Commission in Ex Parte No. MC-48, Determination of Jurisdiction Over Transportation of Petroleum and Petroleum Products by Motor Carriers Within a Single State, 71 M.C.C. 17, 29 (1957), is set forth in 29 C.F.R. § 782.7(b)(2). Id. Pursuant to this test, there is no fixed and persisting intent to ship goods in interstate commerce where:

> (i) [a]t the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

Id. at 672-73; 29 C.F.R. § 782.7. Applying this test to the instant case, Defendant's have failed to show that any of IFCO's clients' out-of-state suppliers intended for pallets, in any quantity, to be shipped to IFCO. IFCO was under contract to ship pallets to and from its customers, not to and from their out-of-state suppliers.[1]

---

[1] To the extent IFCO provided pallet retrieval services to out-of-state customers, Plaintiff has testified that he neither participated in such an out-of-state run nor could have been expected to do so.

Defendant's have also failed to show a fixed or persisting intent that any repaired or refurbished pallets transported by Plaintiff from the service center to IFCO's Central Florida clients were intended for out-of-state transport to a specific destination. According to Plaintiff's affidavit, transportation of these pallets was limited to IFCO's Central Florida customers. Both inbound and outbound arrangement and allocation for shipment of pallets out-of-state from IFCO's Central Florida customers was accomplished by those customers, not IFCO. Absent evidence to the contrary of fixed and persistent intent, the chain of continuity was broken when the pallets were delivered to IFCO's customers, either by the out-of-state suppliers or IFCO.

Defendant has failed to meet its burden of establishing that the motor carrier exemption applied to Plaintiff during his employment with NFI. Plaintiff has raised significant issues of material fact which preclude entry of summary judgment in Defendant's favor.

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Final Summary Judgment (Dkt. 32) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida on August 22, 2008.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2007\07-cv-898.msj.frm